FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA FEB -7  AM 10: 21
JACKSONVILLE DIVISION

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE, FLORIDA

| | | |
|---|---|---|
| HOLLISTER INCORPORATED, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 3:13-CV-132-J-12TEM |
| ZASSI HOLDINGS, INC. f/k/a ZASSI MEDICAL EVOLUTIONS, INC., a Florida corporation, and PETER VON DYCK, an individual, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff, Hollister Incorporated ("Hollister"), by its attorneys and for its complaint against defendants, Zassi Holdings, Inc. f/k/a Zassi Medical Evolutions, Inc. ("Zassi") and Peter von Dyck ("von Dyck"), states as follows:

### Introduction

1.     Zassi developed a bowel management system used principally in hospitals to contain and divert fecal matter for bedridden, incontinent patients.  In 2006, Hollister paid Zassi tens of millions of dollars pursuant to a written Asset Purchase Agreement to acquire Zassi's technology and intellectual property rights related to that system.  During the negotiations of that agreement, Zassi and von Dyck, Zassi's chief executive officer and principal negotiator, failed to disclose to Hollister that Zassi had previously released Zassi's chief competitor, ConvaTec, Inc. ("ConvaTec"), from claims for infringement of Zassi's intellectual property rights based on ConvaTec's bowel management system design, which was marketed and sold as the Flexi-Seal Fecal Management System ("Flexi-Seal").

2.     Hollister only learned of this release in 2010, after Hollister sued ConvaTec for patent infringement.   But for the release, which ConvaTec successfully asserted as a defense to Hollister's claims, Hollister would have obtained a substantial damages award against ConvaTec and injunctive relief precluding ConvaTec from selling its infringing bowel management systems.

3.     In this action, Hollister asserts a claim against Zassi for breach of the warranty of good and marketable title contained in the Asset Purchase Agreement (Count I), and a claim against Zassi and von Dyck for fraudulent inducement (Count II) based on their omissions and misrepresentations of the material fact that Zassi released claims against ConvaTec based on ConvaTec's competing bowel management system design.   Hollister seeks to recover compensatory damages equal to the amount it would have recovered in its lawsuit against ConvaTec if not for Zassi's release, damages equal to the amount spent litigating the undisclosed release with ConvaTec, punitive damages, and the costs of this litigation, including attorneys' fees.

**Parties**

4.     Plaintiff, Hollister, is an independently-owned global company that develops, manufactures and markets health care products including ostomy, continence, critical care (including bowel management), and wound care products.   Hollister is an Illinois corporation with its principal place of business in Libertyville, Illinois.

5.     Defendant, Zassi, is a privately held company that designs, develops, manufactures, and commercializes medical devices.   Zassi is a Florida corporation with its principal place of business in Fernandina Beach, Florida.

2

6.     Defendant, Peter von Dyck, is the founder, chairman and chief executive officer of Zassi.  Von Dyck is a citizen and resident of Fernandina Beach, Florida.

## Jurisdiction and Venue

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds $75,000 exclusive of interest and costs.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the defendants reside in this judicial district and a substantial part of the events and omissions giving rise to this action occurred in this judicial district.

## Zassi's Work with ConvaTec

9.     Von Dyck founded Zassi in 1997 to develop, design, manufacture and commercialize two medical device technology platforms for the acute care and home care markets.  One of these platforms was for a Continent Ostomy Port ("COP") system, which is a pouch-free, non-surgical, continent ostomy management system that effectively acts as an artificial sphincter to restore the patient's control over the evacuation of bowel waste, eliminating the need for a collection bag.  The second was for a bowel management system ("BMS"), which is a temporary containment device for bedridden or immobilized, incontinent patients designed to contain and divert fecal matter, protect patients' wounds from fecal contamination, and reduce both the risk of skin breakdown and spread of infection.

10.     ConvaTec is a global company in the business of making and selling health care products, including ostomy devices and bowel management systems.  Hollister and ConvaTec have been and are competitors.  ConvaTec has more BMS sales than any other company.

3

11.     On October 29, 1999, Zassi and ConvaTec entered into a Development and License Agreement ("the COP Agreement") for the development and distribution of certain ostomy care products including a COP.  Pursuant to the COP Agreement, Zassi and ConvaTec shared know-how pertaining to COP and related technology.  On August 7, 2001, Zassi and ConvaTec entered into a Supply Agreement pertaining to the manufacturing and supply of products consistent with their prior undertakings under the COP Agreement.

12.      Prior to and during 2002, Zassi and ConvaTec shared know-how related to BMS, which included information related to Zassi's BMS device that would be commercially launched in 2003.

13.     On August 21, 2002, Zassi filed a patent application entitled "Bowel Management System" ("'627 Application"), the parent application for what would become U.S. Patent No. 7,147,627 ("'627 Patent"), for its BMS intellectual property.

14.     Zassi commercially launched its BMS device in March 2003.

15.     In 2004, ConvaTec commercially launched Flexi-Seal, its own BMS device.

### Zassi's Settlement with ConvaTec

16.     Disputes arose between ConvaTec and Zassi regarding the COP Agreement, Zassi's BMS device, ConvaTec's Flexi-Seal device, and information and know-how shared by the parties.

17.     On October 6, 2005, ConvaTec and Zassi resolved their disputes and executed a Settlement and Release Agreement ("the Settlement Agreement").

18.     The recitals of the Settlement Agreement provided:

> [I]t is the intention of the Parties hereto that CONVATEC will be permitted to continue manufacturing, offering for sale and selling

4

worldwide the present or past commercially available Flexi-Seal® FMS product…

19.     Paragraph 10 of the Settlement Agreement contained the following provision:

ZASSI hereby fully and forever releases, acquits, and discharges CONVATEC, …from any and all past, present or future claims (including, without limitation, claims for patent infringement or misappropriation and/or misuse of confidential information), to the extent such claims relate in any manner or degree to CONVATEC's present or past commercially available FMS design, currently marketed by CONVATEC as the Flexi-Seal® FMS product…

20.     Paragraph 28 of the Settlement Agreement further provided:

The releases granted pursuant to Paragraphs 6-11 of this Settlement Agreement shall be full and final releases by which each Party waives all rights or benefits which that Party may now have or in the future may have under the terms of any statute or provision of law.  The Parties understand and accept the risk that they may have substantial claims, liabilities, damages, actions and causes of action relating to the releases set forth in Paragraphs 6-11 that have not yet been manifested or are presently unknown, or that have not yet been identified and the Parties nevertheless intend to and do deliberately release these possible future claims, liabilities, damages, actions and causes of action.

21.     ConvaTec and Zassi thereafter became competitors in the BMS marketplace, with ConvaTec's Flexi-Seal device competing against Zassi's BMS device.

22.     On October 13, 2005, Zassi and ConvaTec jointly issued a press release announcing that all prior agreements between them had been terminated through a "series of transactions" that resulted in "ConvaTec acquiring a non-exclusive license from Zassi to make, use and sell products utilizing intellectual property regarding Zassi's Continent Ostomy Port (COP) technology."  The press release did not mention the fact that Zassi had released claims relating to ConvaTec's present and past commercially available FMS design ("ConvaTec's FMS Design").  The '627 Application was still pending at the time.

23.     On April 28, 2006, Zassi filed a patent application entitled "Bowel Management System and Waste Collection Bag Therefor" ("'583 Application") for what would become U.S. Patent No. 7,722,583 ("'583 Patent").

## Hollister's Acquisition of Zassi's BMS Technology

24.     Shortly after its relationship with ConvaTec ended, Zassi approached Hollister regarding a possible sale to Hollister of Zassi's BMS technology and all associated intellectual property rights.

25.     Von Dyck was principally involved on behalf of Zassi in the discussions and negotiations with Hollister that followed.

26.     The discussions and negotiations were thorough.  Zassi and von Dyck provided detailed information to Hollister regarding Zassi's BMS business and technology in an effort to induce Hollister to acquire that business and technology from Zassi.

27.     Throughout these discussions, Hollister questioned Zassi as to the strength of its intellectual property rights in its BMS technology, the nature of Zassi's relationship and agreement with ConvaTec, and whether Zassi had granted rights in its technology to other parties because that information was crucial to the contemplated deal.  Hollister wanted to verify that it would acquire unencumbered and fully enforceable rights to Zassi's BMS technology.

28.     In response to Hollister's inquiries, on numerous occasions Zassi and von Dyck misrepresented Zassi's prior relationship with ConvaTec and failed to disclose all of the facts surrounding Zassi's Settlement Agreement with ConvaTec.  More specifically, Zassi and von Dyck falsely stated that Zassi's relationship and agreements with ConvaTec related only to COP technology, not BMS technology, and they did not disclose to Hollister that Zassi had provided a

release of claims relating to ConvaTec's FMS Design, a clear encumbrance on Zassi's present and future BMS technology rights.

29.    For example:

(a)    On March 9, 2006, Hollister employees Phil Shelley, Michael Kennedy, Seamus Kavanagh, Ed Veome, and John Swanson met on Amelia Island, Florida with Zassi's von Dyck, Joe Walker, John Minasi, James Schneider and Chad Coberly.  At that meeting, von Dyck, as well as Zassi's Chief Science Officer, John Minasi, and Chief Technology Officer, James Schneider, told the Hollister employees that Zassi's prior relationship with ConvaTec related only to COP.

(b)    In an email in April 2006, Zassi and von Dyck represented to Hollister's John Swanson that the only "third party licenses to Zassi IP [intellectual property]" were for "issued and pending patents related to the… *COP device & variations*… non-exclusively licensed to ConvaTec…" (emphasis supplied) and a license of a separate patent to Dr. Jae Hwang Kim for use in South Korea.

(c)    On or about May 2, 2006, in a telephone call, Hollister's Swanson specifically asked Zassi and von Dyck what Zassi had licensed to ConvaTec and whether Zassi had licensed earlier versions of Zassi's BMS technology to ConvaTec.  They answered that Zassi had only licensed to ConvaTec technology relating to COP, and not BMS.

(d)    In a separate telephone conversation with von Dyck in May 2006, Hollister's Swanson again asked von Dyck what Zassi had licensed to ConvaTec.  Von Dyck answered that Zassi had licensed only COP, not BMS, technology to ConvaTec.

(e)    At a meeting on July 31 and August 1, 2006 at Amelia Island Plantation, Amelia Island, Florida, representatives of Hollister met with representatives of Zassi to discuss

7

Zassi's intellectual property that Hollister was considering acquiring. At that meeting,

Hollister's representatives (Seamus Kavanagh, John Swanson, and Jeremy Kriegel) asked

specifically about any licenses that Zassi had given to any other parties relating to its intellectual

property. Zassi's representatives (including von Dyck) stated that Zassi's agreements with

ConvaTec were confidential, but assured Hollister that those agreements related only to COP

technology, not BMS.

      (f)     In or about August 2006, Zassi's Chief Technology Officer, Jim

Schneider, met with Swanson and other Hollister employees at Hollister's offices in Libertyville,

Illinois. The purpose of the meeting was to conduct a detailed review of Zassi's BMS

technology so that Hollister had a complete understanding of the technology it was considering

buying and the strength of Zassi's intellectual property protection. At no time during this

meeting did Schneider disclose that Zassi had released claims of infringement of its BMS

intellectual property rights as to the FMS Design of Zassi's sole competitor, ConvaTec.

      30.     The statements set forth in the preceding paragraph were materially false and

misleading because Zassi and von Dyck created the false impression that Zassi's relationship

with ConvaTec related only to COP technology, nowhere indicated that Zassi's relationship with

ConvaTec also related to BMS technology, and never disclosed to Hollister during these

discussions that Zassi had released claims and potential claims with respect to ConvaTec's FMS

Design, a serious encumbrance to the BMS intellectual property that Zassi was attempting to sell

to Hollister.

      31.     Relying on Zassi's representations that its BMS technology was unencumbered,

in September 2006, Hollister entered into an Asset Purchase Agreement ("Purchase

Agreement") with Zassi, Zassi Medical Systems, LLC, and Bowel Management Systems, LLC

(collectively, "the Zassi Companies"). Pursuant to the Purchase Agreement, Hollister acquired

certain assets from the Zassi Companies, including Zassi's interests in the '627 and '583

Applications ("the Purchased Assets").

32.     In Section 3 of the Purchase Agreement, the Zassi Companies made a number

of representations including:

> (d)     Title to Assets. Seller has good and marketable title to, or a valid
> leasehold interest in, the Purchased Assets, which assets… constitute all
> the assets and interests in assets that are used in the Business…. The
> Purchased Assets constitute all of the assets, tangible and intangible, of
> any nature whatsoever, necessary to operate the Business as it is presently
> conducted. …

33.     On September 13, 2006, pursuant to the Purchase Agreement, Zassi assigned its

rights to the '627 and '583 Applications to Hollister. On December 12, 2006, the '627

Application issued as the '627 Patent. On May 25, 2010, the '583 Application issued as the

'583 Patent.

34.     Hollister paid Zassi tens of millions of dollars for the Purchased Assets pursuant

to the Purchase Agreement.

### Hollister Learns of the Settlement Agreement

35.     Following its acquisition of the Purchased Assets from Zassi, Hollister took

over the manufacturing, marketing and selling of Zassi's BMS device, subsequently rebranded

by Hollister as the ActiFlo device.

36.     Accordingly, Hollister began competing in the BMS marketplace with

ConvaTec's FMS products, including Flexi-Seal and its subsequently-released Flexi-Seal Signal

fecal management system ("Signal").

37.     On October 7, 2010, Hollister filed suit against ConvaTec, alleging that ConvaTec's FMS products, including its Flexi-Seal and Signal devices, infringed at least one of the claims of the '583 Patent ("the ConvaTec Lawsuit").

38.     In response, ConvaTec asserted that Hollister's claim was barred by the Settlement Agreement.  That is, ConvaTec argued that Zassi had released its present and future claims for infringement as to the Flexi-Seal and Signal products and that Hollister, as Zassi's assignee, could only assert such rights as Zassi had.   It was at this time that Hollister first received a copy of the Settlement Agreement and learned that the scope of the Settlement Agreement did not, in fact, relate only to COP technology as Zassi had falsely represented, but also included a release of claims relating to ConvaTec's FMS Design – a material encumbrance on the Purchased Assets.

39.     ConvaTec moved for summary judgment on Hollister's claims based on the release in the Settlement Agreement.  The District Court granted that motion, holding: "Based on the plain language of the settlement agreement, the Court concludes that Zassi and ConvaTec intended to release ConvaTec from patent infringement claims relating to its Flexi-Seal and Flexi-Seal Signal products." *Hollister Incorporated v. ConvaTec Inc.,* 2011 U.S. Dist. LEXIS 66638 at *11 (N.D. Ill. June 21, 2011).

40.     On June 19, 2012, the Federal Circuit Court of Appeals summarily affirmed the district court's summary judgment in favor of ConvaTec.

41.     ConvaTec's Flexi-Seal and Signal devices infringe upon the '583 Patent, and Hollister would have prevailed in the ConvaTec Lawsuit if not for the release in the Settlement Agreement.

## COUNT I

### (Breach of Contract against Zassi)

42.     Hollister realleges and incorporates by reference Paragraphs 1 through 41 above as and for this Paragraph 42 of Count I as if fully set forth herein.

43.     "Good and marketable title" means title that is free from flaws decreasing market value and that a reasonably intelligent person, who is well informed as to the facts and their legal bearings, would be willing to accept in the exercise of ordinary business prudence.

44.     Zassi did not deliver to Hollister "good and marketable title" to the Purchased Assets and, specifically, to its BMS intellectual property because Zassi's undisclosed release of claims relating to ConvaTec's FMS Design significantly lowered the market value of that intellectual property inasmuch as the related intellectual property rights could not be asserted against ConvaTec, the largest competitor in the BMS marketplace.

45.     No reasonably intelligent person, knowing about the release, would have acquired the Purchased Assets at the price that Hollister paid to Zassi.

46.     If Hollister had known about the release, Hollister would not have paid the price that it paid to acquire the Purchased Assets.

47.     Because of the undisclosed release, Zassi did not have good and marketable title to the Purchased Assets and therefore breached Section 3 of the Purchase Agreement.

48.     As a direct and proximate result of that breach, Hollister has been damaged in an amount to be proven at trial equal to the amount that Hollister would have recovered from ConvaTec in the ConvaTec Lawsuit if Zassi had not released claims against ConvaTec in the Settlement Agreement, plus the costs and attorneys' fees incurred by Hollister in litigating the undisclosed release with ConvaTec.

49.     Hollister performed all of its obligations under the Asset Purchase Agreement.

WHEREFORE, plaintiff, Hollister Incorporated, respectfully prays that the Court enter judgment in its favor and against defendant, Zassi Holdings, Inc. f/k/a Zassi Medical Evolutions, Inc., for compensatory damages in an amount to be proven at trial, plus Hollister's attorneys' fees and costs.

## COUNT II

### (Fraudulent Inducement against Zassi and von Dyck)

50.     Hollister realleges and incorporates by reference Paragraphs 1 through 41 above as and for this Paragraph 50 of Count II as if fully set forth herein.

51.     As described above, Zassi and von Dyck misrepresented the fact that Zassi's prior relationship with ConvaTec had related only to COP technology, and not BMS technology, and omitted and concealed the fact that Zassi had released claims against ConvaTec relating to ConvaTec's Flexi-Seal product.

52.     Zassi and von Dyck had a duty to disclose the release they had given to ConvaTec.

53.     The existence of the release was material to the discussions and negotiations between Hollister and Zassi that culminated in the parties entering into the Purchase Agreement since it greatly affected the value of the assets that Hollister was purchasing. Indeed, Hollister wanted to acquire intellectual property rights in Zassi's BMS technology that were unencumbered and were fully enforceable. To that end, Hollister had specifically and repeatedly requested information regarding licenses and settlements, but Zassi and von Dyck repeatedly misrepresented that Zassi's only settlement and licenses with ConvaTec related to COP technology, not to BMS.

54.     Zassi and von Dyck knew or should have known of the misrepresentations and omissions since they were intimately familiar with the Settlement Agreement that Zassi had entered into with ConvaTec.  In fact, von Dyck executed the Settlement Agreement in his role as CEO of Zassi.

55.     Zassi and von Dyck knew from their discussions with Hollister that Hollister was intending to rely on information supplied by Zassi and von Dyck regarding licenses and settlement agreements in considering whether to purchase Zassi's BMS business, and they intended Hollister to rely on the aforesaid misrepresentations and omissions.

56.     Hollister has suffered injury as a proximate result of its reasonable reliance upon Zassi's and von Dyck's material fraudulent misrepresentations and omissions with respect to the release of ConvaTec set forth in the Settlement Agreement.  Had Hollister known about the release, Hollister either would not have agreed to purchase Zassi's BMS technology or would have only agreed to pay significantly less than it actually paid to Zassi for that technology.

57.     As a result of Zassi's and von Dyck's material fraudulent misrepresentations and omissions, Hollister has been damaged in an amount to be proven at trial equal to the amount that Hollister would have recovered against ConvaTec in the ConvaTec Lawsuit if not for the release contained in the Settlement Agreement, plus the attorneys' fees and costs that Hollister incurred in litigating the undisclosed release with ConvaTec.

WHEREFORE, plaintiff, Hollister Incorporated, respectfully prays that the Court enter judgment in its favor and against defendants, Zassi Holdings, Inc. f/k/a Zassi Medical Evolutions, Inc. and Peter von Dyck, for compensatory damages in an amount to be proven at trial, plus punitive damages, and Hollister's attorneys' fees and costs.

Frank R. Jakes, FBN 372226
E-Mail:  frankj@jpfirm.com
Randol Mora FBN 0099895
E-Mail:  randym@jpfirm.com
Johnson, Pope, Bokor, Ruppel & Burns, LLP
403 East Madison Street, Suite 400
Tampa, Florida
(813) 225-2500
Trial Counsel for Plaintiff

And

James D. Adducci
Marshall L. Blankenship
Adducci, Dorf, Lehner,
    Mitchell & Blankenship, P.C.
150 North Michigan
Suite 2130
Chicago, Illinois  60601
(312) 781-2800