**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOLLISTER INCORPORATED, an
Illinois corporation,

      Plaintiff,

v.                                                  Case No. 3:13-cv-132-J-32PDB

ZASSI HOLDINGS, INC., a Florida
corporation and PETER VON DYCK,
an individual,

      Defendants.

_____

## O R D E R

Following a jury verdict in Plaintiff Hollister Incorporated's favor on liability, the Court conducted a non-jury trial on damages, thereafter issuing its Findings of Fact and Conclusions of Law ("FFCL") (Doc. 197) awarding Hollister zero damages. Hollister moved under Rule 52(b) and 59 to alter the Court's ruling. (Doc. 199). Because the zero damages award gave the Court pause, the Court held a hearing on this motion. (Doc. 204). After full review, the Court maintains its position that while Hollister's damages model was viable, it failed to provide evidence to support that model. The Court, therefore, adheres to its original ruling. In considering the correctness of this decision, the Court suggests that the reader not only consider this Order, but also the FFCL and the transcript of the October 20, 2016 hearing on this motion.[1]

_____

[1] In preparing this Order, the Court used a rough copy of the transcript from

## I.   STANDARD OF REVIEW

Under Rule 52(b), "[o]n a party's motion . . . the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). "The purpose of Rule 52(b) is to allow the court to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence, but not to allow the relitigation of old issues, a rehearing on the merits, or the presentation of new theories of the case." <u>Perez v. Renaissance Arts & Educ., Inc.</u>, No. 8:12-CV-514-T-MAP, 2014 WL 408334, at *1 (M.D. Fla. Feb. 3, 2014) (internal quotations omitted) (citing <u>Hanover Ins. Co. v. Dolly Trans Freight, Inc.</u>, No. 6:05–cv–576–Orl–19DAB, 2007 WL 170788, at * 2 (M.D. Fla. Jan. 18, 2007)). "A party seeking to amend findings under Rule 52(b) must show that the trial court's findings of fact or conclusions of law are not supported by evidence in the record." <u>Id.</u>

"A motion to alter or amend under Rule 59(e) does not provide a mechanism for a dissatisfied party to re-litigate a matter."[2] <u>Murphree v. Colvin</u>, No. CV-12-BE-1888-M, 2015 WL 631185, at *2 (N.D. Ala. Feb. 13, 2015) (citing <u>Arthur v. King</u>, 500 F.3d

---

the October 20, 2016 hearing, as neither party ordered the official transcript. The Court assumes that if an appeal is filed, the parties will order an official transcript.

[2] Although Hollister filed its motion pursuant to Rule 59, it does not specify under which portion of the rule it seeks relief. Hollister cites Rule 59(a)(1) and (2) (Doc. 199 at 6) but appears only to request that the Court amend the judgment under Rule 59(e) (<u>id.</u> at 1, 15), not order a new trial. When Defendant von Dyck mentioned in his response to the motion that it was not clear whether Hollister was requesting a new trial (Doc. 201 at 1-2), Hollister did not move to file a reply and clarify its position. Moreover, at the hearing, Hollister did not request a new trial. Therefore, the Court concludes that Hollister now seeks relief only pursuant to Rule 59(e).

1335, 1343 (11th Cir. 2007) ("A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.")). The Eleventh Circuit has recognized two grounds for granting a Rule 59 motion: "[1] newly-discovered evidence or [2] manifest errors of law or fact." Arthur, 500 F.3d at 1343 (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999)). An intervening change in controlling law is also a ground for reconsideration. See Murphree, 2015 WL 631185, at *2.

## II.   ANALYSIS

Hollister asserts that in awarding zero damages, the Court made a manifest error of law and requests that the Court amend or add findings to its FFCL and/or alter or amend the Final Judgment. (Doc. 199 at 6). Specifically, Hollister points to the nature of the underlying claim—common law fraud—and reminds the Court that the standard for damages under Florida law is "reasonable certainty," which does not require "mathematical precision."[3] (Id. at 6). Further, even if the Court applies a pure patent infringement damages analysis, Hollister argues that it would still be entitled to a reasonable royalty award greater than zero, and in fact, it would probably be

---

[3] The FFCL set forth the standard for awarding damages. (See Doc. 197 at 18) ("The measure of damages is the amount of money that would put Hollister in as good a position as it would have been in if the Defendants had not . . . made the misrepresentations and omissions at issue."). But, as the Court articulated in the FFCL, because Hollister tried its damages case as a case within a case—namely, a patent infringement case—it had to prove patent damages. (See id.) ("Applying this measure, Hollister's damages constitute the amount it could have recovered against ConvaTec in patent damages if the release that Zassi gave to ConvaTec in the settlement agreement had not precluded a patent claim. Thus, Hollister is entitled to damages as prescribed by patent law."). This Hollister failed to do.

beyond the Court's discretion to find otherwise. (Id. at 10). At trial and in post-trial briefing, Hollister offered evidence in support of one number: $25,868,500 in damages based on an extrapolation of $6.65 million.[4] (Doc. 186).

Only now, facing a zero damages award, does Hollister suggest that the Court consider two other numbers as damages awards: $6.65 million—the amount of the Bard settlement (without extrapolation); or $5.9 million—the amount ConvaTec paid Zassi in the 2005 ConvaTec agreement for a release of claims for infringement as to ConvaTec's fecal management system design, marketed as the Flexi-Seal FMS product (Pl. Ex. 6 ¶¶ 2, 10).[5] Hollister also renews its original request for $25,868,500 plus interest. (Doc. 199 at 15). According to Hollister, "the record is replete with evidence from which a reasonable award of compensatory damages may be derived." (Id. at 3). Although Hollister agreed at the hearing that its expert, Russell Genet, does not know

---

[4] The Court did not reach the issue of whether using Hollister's proposed GHX data extrapolation method and the number 3.89 as a measure of market share was reasonable because it found the amount in the Bard agreement too speculative to rely on in calculating a reasonable royalty. (Doc. 197 at 36 n.32).

[5] In Hollister's Reply to Defendant's Proposed Findings of Fact and Conclusions of Law, Hollister argued that $5.9 million and $8.7 million constitute "benchmarks" supporting its original damages calculation. (Doc. 196 at 8 n.5). However, it was not until Hollister filed the instant motion that it set forth $6.65 million and $5.9 million as independent, alternative figures for the Court to consider as damages awards. (Doc. 199 at 15).

At oral argument, Hollister abandoned any attempt to argue that the Court should use $8.7 million, the amount Hollister's investment brokers allegedly set as the value of the acquired Zassi intellectual property, as a measure of damages. (See Doc. 196 at 8 n.5) (suggesting $8.7 million is a benchmark supporting Hollister's original damages request). Regardless, in the FFCL, the Court addressed the reasons for which it would have rejected $8.7 million as a measure of damages, and that analysis stands. (Doc. 197 at 34-35 n.31).

4

how $6.65 million was calculated, and that the manner in which the parties to the Bard settlement arrived at $6.65 million is not otherwise in the record, Hollister nevertheless argues that the existing evidence supports its damages calculation: Bard and Hollister were engaged in litigation involving the same patent, the same field of technology, at the same time Hollister was trying to enforce its rights against ConvaTec. Further, Hollister states that it and Bard are sophisticated parties which know their relative positions in the marketplace. Given these similarities, Hollister reiterates that the Bard agreement is a reasonable basis from which to extrapolate its damages in the infringement suit it would have pursued against ConvaTec but for the release. Or, if the Court cannot find a basis to extrapolate $6.65 million and reach $26 million, Hollister asserts that its case against ConvaTec would have to have been worth at least $6.65 million—what Bard paid for its license. Alternatively, Hollister contends that, at a minimum, the Court should award it $5.9 million, the alleged value of the 2005 release that enabled ConvaTec to avoid Hollister's patent infringement lawsuit. Even if the Court does not find any of Hollister's evidence persuasive, Hollister argues that under patent law, particularly Apple Inc. v. Motorola, Inc., it is incumbent upon the Court to determine a reasonable royalty from the evidence in the record. 757 F.3d 1286 (Fed. Cir. 2014) overruled on other grounds by Williamson v. Citrix Online, LLC, 792 F.3d 1339 (Fed. Cir. 2015).[6]

---

[6] Hollister emphasizes the Apple court's dicta at footnote 7 (Doc. 199 at 13), which states that "[w]e note that we know of no case where we found that the record supported an infringement award of a zero royalty." Apple, 757 F.3d at 1328 n.7 (citing DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1334 (Fed. Cir. 2009) (finding 0% jury royalty award inconsistent with finding of infringement and

As it did in making its FFCL, the Court once again accepts its obligation to award Hollister reasonable royalty damages that are supported by the evidence. (See Doc. 197 at 35-36) ("It is true that a district court must determine a reasonable royalty based on whatever evidence is in the record, [Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1382 (Fed. Cir. 2003)], but Hollister did not present record evidence from which the amount of damages could be determined."); see Apple, 757 F.3d at 1327 ("If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record."); see also Info-Hold, Inc. v. Muzak LLC, 783 F.3d 1365, 1372 (Fed. Cir. 2015) ("As we made clear in [Dow, 341 F.3d at 1381], 35 U.S.C. § 284 requires the district court to award damages 'in an amount no less than a reasonable royalty' even if the plaintiff's [sic] has no evidence to proffer. We explained that, in such a case, the district court should consider the Georgia–Pacific factors 'in detail, and award such reasonable royalties as the record evidence will support.'") (citation omitted). Consistent with this mandate, the Court has again scoured the record for any evidence assigning meaning to $6.65 million as a basis for reasonable royalty damages. However, for the reasons stated in

---

jury instruction that the jury choose a rate between 6% and 15%)).

However, Hollister fails to point out that the Apple court included a second citation in footnote 7 which supports the proposition that it is not beyond courts' discretion to award zero damages in the absence of sufficient evidence: "But see Devex Corp. v. Gen. Motors Corp., 667 F.2d 347, 361 (3d Cir. 1981) ("In the absence of any evidence as to what would constitute a reasonable royalty in a given case, a fact finder would have no means of arriving at a reasonable royalty, and none could be awarded."), aff'd on other grounds, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983))." Therefore, Apple does not disavow an award of zero damages under any circumstances.

the FFCL, the Court has again found none. In fact, the review of Genet's testimony merely bolsters the Court's previous conclusion (which Hollister does not contest) that Genet has no idea how Bard and Hollister arrived at their settlement value, much less whether it could constitute a basis to calculate a reasonable royalty had ConvaTec and Hollister litigated a patent infringement case to verdict.

The Court has reconsidered the evidence upon which Hollister relies—namely that the Bard agreement involved the same patent and was reached during the same timeframe as the then-pending suit against ConvaTec, and the fact that there are only three competitors in bowel management system ("BMS") market—to show that the value of the Bard agreement is a reasonable measure of damages. But that evidence was before the Court at trial and was addressed in the FFCL. (Doc. 197 at 28). Indeed, the circumstances surrounding the Bard agreement, which Hollister characterizes as making it so similar to the agreement it would have negotiated with ConvaTec but for the release, merely support the reasonable royalty theory of damages, not the number underlying the theory. There is simply no evidence in the record underpinning the $6.65 million number to convince the Court it is probative of the reasonable royalty value which Hollister tried to prove.

Although Hollister correctly argued in its motion and at the hearing that it need not prove with precision the value of its damages, even it agrees that it still must prove its damages with "reasonable certainty." While the Court understands that under patent law and Florida law it must award Hollister some measure of reasonable damages, the vacuum in which the $6.65 million figure exists prevents the Court from

7

ascertaining that it constitutes a reasonable royalty. Therefore, in light of Genet's statements at trial, which were the only evidence regarding the $6.65 million figure, the Court finds that Hollister has failed to prove that it is entitled to damages in the amount of $6.65 million, much less $26 million, with any measure of reasonable certainty.

Alternatively, Hollister belatedly suggests that the Court award a minimum of $5.9 million, the alleged value of the 2005 release Zassi sold ConvaTec. (Pl. Ex. 6; Doc. 199 at 3-4). Hollister maintains that von Dyck should not be allowed to keep the value of the release that the jury found to have been fraudulently concealed. At first blush, this suggestion has some appeal, though it has nothing to do with the evidence Hollister put on at trial to prove its $26 million damages request.[7]

At the hearing, von Dyck opposed the use of $5.9 million as a basis for Hollister's damages, asserting that the ConvaTec agreement involved continent ostomy port ("COP") technology, which is unrelated to the BMS technology at issue in the 2010-2011 dispute between ConvaTec and Hollister. Thus, it is unclear whether the value of the release was $5.9 million or some lower amount, with the balance attributable to a release from claims related to COP technology. Further, the ConvaTec agreement was signed in 2005, five years before the issuance of the '583 patent and Hollister's subsequent patent infringement lawsuits against ConvaTec and Bard. Thus, the timeframe makes the number too attenuated to be useful now.

---

[7] Hollister did not point to evidence in the record supporting $5.9 million as a reasonable royalty in its motion or at the hearing; instead, it merely averred that it discussed the theory at trial.

8

On rebuttal, Hollister attempted to shift the burden of proof to von Dyck, noting that, as one of the parties to the ConvaTec agreement, von Dyck could have explained at trial how much of the $5.9 million was attributable to the paragraph 10 release and the COP products; he simply chose not to do so in order to avoid giving the Court an alternative damages calculation to consider. While that may be true, patent law is clear that Hollister, as patentee, bears the burden of proof on damages. (See Doc. 197 at 18) (citing Dow, 341 F.3d at 1381). Von Dyck had no duty to present an alternative damages number. Notably, Hollister did not deny that there are other items in the ConvaTec agreement between ConvaTec and Zassi which call into question whether the release itself was valued at $5.9 million or whether the release in addition to a host of other items was worth that amount. Nor did Hollister attempt to explain the value of the release of claims in paragraph 10 in its motion or at the hearing; it merely suggested that $5.9 million is an absolute minimum damages award.

The Court has reviewed the ConvaTec agreement and finds that it does not answer the vital question of how much of the $5.9 million is attributable to the release in paragraph 10. The ConvaTec agreement states: "Disputes have arisen between ConvaTec and Zassi regarding the COP Agreement, Bowel Management System, FMS and information or know-how provided, shared or exchanged between the Parties prior to the Effective Date." (Pl. Ex. 6 at 2). In addition, the ConvaTec agreement provides that the "Parties desire to settle and resolve all existing and potential disputes . . . [and] lawsuits . . . they may have against each other related to the COP Agreement, Bowel Management System, FMS or information or know-how provided, shared or

exchanged . . . ." (<u>Id.</u>). This language implies that the $5.9 million was consideration not only for Zassi's release of claims against ConvaTec in paragraph 10, but also for the resolution of disputes related to COP technology. From the face of the ConvaTec agreement, the Court simply has no way of knowing what value the parties assigned to the paragraph 10 release. And, of course, Hollister presented no evidence at trial to support this theory.

Even so, in undertaking its duty to figure out what damages are supported by the evidence, the Court noted that the ConvaTec agreement states that pursuant to the 1999 COP Agreement between ConvaTec and Zassi, "ConvaTec paid Zassi in excess of . . . [$3.3 million] upon Zassi's achievement of certain milestones." (<u>Id.</u> at 1). The Court considered whether it would be reasonable to subtract $3.3 million from $5.9 million and award reasonable royalty damages in the amount of $2.6 million.[8] However, in the absence of evidence related to the COP Agreement and any explanation of the total value of the COP technology and release of related claims in 2005 (six years after the 1999 COP Agreement), even that calculation would be purely speculative. As a result, any attempt to parse the value of the paragraph 10 release would be guesswork on the Court's part and not supported by evidence in the record.

The Court sees no alternative method by which to calculate reasonable royalty or even nominal damages. <u>See</u> <u>Devex Corp. v. Gen. Motors Corp.</u>, 667 F.2d 347, 363 (3d Cir. 1981), <u>aff'd</u>, 461 U.S. 648 (1983) ("Even if there is no burden of proof on the

---

[8] Neither party suggests that the Court consider this method of calculating reasonable royalty damages.

party seeking damages in [a patent infringement] case to come forward with a reasonable royalty, there must at the least be enough evidence in the record to allow the factfinder to formulate a royalty."); Info-Hold, 783 F.3d at 1372 ("Where the patentee's proof is weak, the court may award nominal damages."). The Court has considered the royalty numbers Hollister suggested—and some Hollister did not[9]—and, consistent with Info-Hold, 783 F.3d at 1372, contemplated what reasonable royalty it could award using the Georgia–Pacific framework. (See Doc. 197 at 26). However, as before, due to the nature of the evidence elicited at trial (all lump-sum settlement agreement values), any reasonable royalty or nominal damages number the Court chooses would simply be plucked from obscurity, unsupported by evidence.

Accordingly, it is hereby

**ORDERED:**

Plaintiff Hollister Incorporated's Post-Trial Motion Pursuant to Fed. R. Civ. P. 52(b) and 59 (Doc. 199) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida the 8th day of December, 2016.

---

[9] At the hearing, the Court briefly discussed with Hollister the notion of nominal damages. Hollister did not explain what it would even estimate as nominal damages, though it insinuated that any nominal damages the Court could award in this case would have to be a lot more than the $10,000 in nominal damages awarded in Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div., 895 F.2d 1403, 1407 (Fed. Cir. 1990). The Court has considered awarding nominal damages pursuant to Lindemann and Apple but again has insufficient competent evidence upon which to calculate such an award with reasonable certainty. See Apple, 757 F. 3d at 1328 ("Certainly, if the patentee's proof is weak, the court is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.") (citing Lindemann, 895 F.2d at 1407-08).

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record